## RUNKLE v. UNITED STATES.

## UNITED STATES v. RUNKLE.

### APPEALS FROM THE COURT OF CLAIMS.

Argued April 22, 1887. — Decided May 27, 1887.

Article 65 of the Articles of War in the act of April 10, 1806, 2 Stat. 359, 367, "for the government of the armies of the United States," enacted that "neither shall any sentence of a general court-martial, in time of peace, extending to the loss of life, or the dismission of a commissioned officer, or which shall, either in time of peace or war, respect a general officer, be carried into execution until after the whole proceedings shall have

been transmitted to the Secretary of War to be laid before the President of the United States, for his confirmation or disapproval, and orders in the case." *Held:*

(1) That the action required of the President by this article is judicial in its character, and in this respect differs from the administrative action considered in *Wilcox* v. *Jackson*, 13 Pet. 498; *United States* v. *Eliason*, 16 Pet. 291; *Confiscation Cases*, 20 Wall. 92; *United States* v. *Farden*, 99 U. S. 10; *Wolsey* v. *Chapman*, 101 U. S. 755.

(2) That (without deciding what the precise form of an order of the President approving the proceedings and sentence of a court martial should be, or that his own signature should be affixed thereto) his approval must be authenticated in a way to show, otherwise than argumentatively, that it is the result of his own judgment and not a mere departmental order which may or may not have attracted his attention, and that the fact that the order was his own must not be left to inference only.

(3) That until the President acted in the manner required by the article, a sentence by a court-martial of dismissal of a commissioned officer from service in time of peace was inoperative.

There being no sufficient evidence that the action of the court-martial which dismissed Major Runkle from the service was approved by the President, it follows that he was never legally cashiered or dismissed from the army.

THIS record showed that on the 14th of September, 1882, Benjamin P. Runkle filed in the office of the Second Auditor of the Treasury Department a claim, based on the decision of this court in *United States* v. *Tyler*, 105 U. S. 244, for longevity pay as an officer in the army of the United States, "retired from active service," and that on the 27th of June, 1883, the Secretary of the Treasury referred it to the Court of Claims, under § 2 of the act of March 3, 1883, c. 116, 22 Stat. 485, for an opinion upon the following questions:

"1st. Was the court-martial that tried Benjamin P. Runkle duly and regularly organized, and had it jurisdiction of the person of said Runkle, and of the charges upon which he was tried?

"2d. Were the proceedings and findings of said court-martial regular and the sentence duly approved in part by the President of the United States, as required by law?

"3d. Was Benjamin P. Runkle legally cashiered and dismissed from the army of the United States, in pursuance of said court-martial and subsequent proceedings?

" 4th. Was the President of the United States authorized and empowered by executive order to restore said Runkle to the army, as it is claimed he was restored by the order of August 4, 1877?

" 5th. Is Benjamin P. Runkle now a retired army officer, with the rank of major, and, as such officer, entitled to longevity pay under what is known as the Tyler decision?"

Runkle thereupon filed his petition in the Court of Claims, in accordance with the rules of practice in that court applicable to such cases, and the United States put in a counter claim for " $23,585.62, moneys paid to the said claimant by the Paymaster-General and his subordinates, without authority of law, being the pay and allowances of a major in the army upon the retired list, from the 4th day of August, 1877, to January 1, 1884, during which period the said claimant was not a major in the army, nor in any way authorized to draw pay and allowances as aforesaid."

The facts as found by the Court of Claims were as follows:

I. April 22, 1861, the claimant was mustered in as a captain of 13th Ohio Volunteer Infantry, and served as such till November 8, 1861, when he was mustered in as major. August 18, 1862, he was honorably mustered out.

August 19, 1862, he was mustered in as colonel of 45th Ohio Volunteer Infantry, and honorably mustered out July 21, 1864.

August 29, 1864, he accepted appointment as lieutenant-colonel of Veteran Reserve Corps, and was honorably mustered out October 5, 1866.

October 6, 1866, he accepted appointment as major of 45th U. S. Infantry, became unassigned, March 15, 1869, and was placed on the retired list as major U. S. Army, December 15, 1870.

II. At the time he was so placed on the retired list he was on duty as a disbursing officer of the Bureau of Refugees, Freedmen, and Abandoned Lands for the state of Kentucky, and had been on that duty from April 11, 1867; and con-

tinued on it without any new assignment to it, until he was arrested for trial before a court-martial, as hereinafter shown.

III. June 25, 1872, the following Special Order, No. 146, was issued by the War Department :

"1. By direction of the President, a general court-martial is hereby appointed to meet at Louisville, Kentucky, on the 5th day of July, 1872, or as soon thereafter as practicable, for the trial of 2d Lieutenant John L. Graham, 13th Infantry, and such other prisoners as may be brought before it."

Before the court-martial convened and organized under this order, the said Runkle was arraigned and tried on the following charges :

Charge I. — "Violation of the act of Congress approved March 2, 1863, c. 67, § 1."

Charge II. — "Conduct unbecoming an officer and a gentleman."

The specifications presented under these charges were all based on acts alleged to have been done by the claimant while on duty as a disbursing officer of the Bureau of Refugees, Freedmen, and Abandoned Lands. There were thirteen specifications under the first charge, and fourteen under the second. All the specifications averred acts done by him in the year 1871, except the 1st and 5th under Charge I, and the 1st, 5th, and 14th under Charge II, all of which averred acts done in 1870, before he was placed on the retired list. Of the 1st and 5th specifications under Charge I, and of the 14th under Charge II, he was found guilty. He was also found guilty of ten other specifications under Charge I, and of five other specifications under Charge II, all of which averred acts done by him in 1871. He was also found guilty of both charges; and was sentenced by the court to be cashiered; to pay the United States a fine of $7500 ; and to be confined in such penitentiary as the President of the United States might direct, for the period of four years ; and in the event of the non-payment of the fine at the expiration of four years, that he should be kept in confinement in the penitentiary until the fine be paid ; the total term of imprisonment, however, not to exceed eight years.

IV. The proceedings, findings, and sentence of said court-martial were transmitted to the Secretary of War, who wrote upon the record the following order : .

" The proceedings in the foregoing case of Major Benjamin P. Runkle, retired, United States army, are approved, with the exception of the action of the court in rejecting as evidence a certain letter written by a witness for the prosecution, and offered to impeach his credibility ; also in unduly restricting the cross-examination of the same witness in relation to the motives influencing his testimony.

" Inasmuch, however, as in the review of the case it was determined that the whole testimony of this witness could be excluded from consideration without impairing the force of the testimony for the prosecution, upon which the findings rest, the erroneous action of the court in this respect does not affect the validity of the sentence.

" The findings and sentence are approved.

" In view of the unanimous recommendation by the members of the court that accused shall receive executive clemency on account of his gallant services during the war, and of his former good character, and in consideration of evidence, by affidavits presented to the War Department since his trial, showing that accused is now, and was at the time when his offence was committed, suffering under great infirmity in consequence of wounds received in battle, and credible representations having been made that he would be utterly unable to pay the fine imposed, the President is pleased to remit all of the sentence, except so much thereof as directs cashiering, which will be duly executed.

" Wm. W. Belknap,
" *Secretary of War.*"

The said Secretary also issued, January 16, 1873, a General Order of the War Department No. 7, series of 1873, announcing the sentence of the court-martial, and that " Major Benjamin P. Runkle, U. S. Army (retired), ceases to be an officer of the army from the date of this order."

From the date of this order till after August 4, 1877, the claimant's name was not borne upon the Army Register.

V. August 4, 1877, R. B. Hayes, President of the United States, made the following order:

"EXECUTIVE MANSION,

"*Washington, August* 4, 1877.

"In the matter of the application of Major Benjamin P. Runkle, U. S. Army (retired).

"The record of official action heretofore taken in the premises shows the following facts, to wit:

"First. That on the 14th of October, 1872, Major Runkle was found guilty by court-martial upon the following charges, to wit:

"Charge 1. 'Violation of the act of Congress approved March 2, 1863, c. 67, § 1.'

"Charge 2. 'Conduct unbecoming an officer and a gentleman.'

"Second. That on the 16th of January, 1873, W. W. Belknap, then Secretary of War, approved the proceedings of said court, and thereupon caused General Order No. 7, series of 1873, to issue from the War Department, by which it was announced that Major Benjamin P. Runkle was cashiered from the military service of the United States.

"Third. That subsequent to the date of said General Order No. 7, to wit, on the 16th day of January, 1873, Major Runkle presented to the President a petition, setting forth that the proceedings of said court had not been approved by the President of the United States, as required by law; that said conviction was unjust; that the record of said proceedings was not in form or substance sufficient in law to warrant the issuing of said order, and asking the revocation and annulment of the same.

"Fourth. That in pursuance of this petition, the record of the official action theretofore had in the premises was, by direction of the President, Ulysses S. Grant, referred to the Judge Advocate General of the United States army for review and report

"Fifth. That thereupon the Judge Advocate General reviewed the case, and made his report thereon, in which it is reported and determined, among other things, that in the proceedings had upon the trial of the case by said court, 'it is nowhere affirmatively established that he (Major Runkle) actually appropriated any money to his own use.'

"It also appears in said report that the conviction of said Runkle, upon charge one as aforesaid, is sustained upon the opinion that sufficient proof of the crime of embezzlement on the part of the accused was disclosed by the evidence before the court. And with respect to charge two no reference to the same is made in said report, except to deny the sufficiency of the evidence in the case, for a conviction upon the fourteenth specification thereof; and it is to be observed that the thirteen remaining specifications under this charge are identical with the thirteen specifications under charge one.

"The Judge Advocate General further finds and determines in said report as follows, to wit: 'For alleged failures to pay, or to pay in full,' on the part of the sub-agents, 'I am of the opinion that the accused cannot justly be held liable.'

"Sixth. That no subsequent proceedings have been had with reference to said report, and that the said petition of said Runkle now awaits further and final action thereon.

"Whereupon, having caused the said record, together with said report, to be laid before me, and having carefully considered the same, I am of opinion that the said conviction is not sustained by the evidence in the case, and the same, together with the sentence of the court thereon, are hereby disapproved; and it is directed that said Order No. 7, so far as it relates to said Runkle, be revoked.

"R. B. HAYES."

At the time of the issue by President Hayes of this order, the number of officers on the retired list of the army was 300, and continued so until November 19, 1877. During that period the claimant was carried on the army records as additional to the number of retired officers allowed by law, until a vacancy occurred on said last-named date; since which date he has

been borne on the retired list, and up to January 1, 1884, has drawn pay to the amount of $23,585.62. Of this sum $9,195.27 was paid to him August 15, 1877, for the period from January 16, 1873, the date of the order signed by Secretary Belknap, to the 4th of August, 1877, the date of the order of President Hayes.

VI. August 7, 1877, the claimant addressed a letter to the Paymaster General of the army, asserting his legal right to pay as a retired major for the period of time between the dates of those two orders. This letter the Paymaster General referred to the Secretary of War, with the following indorsement:

"Respectfully forwarded to the Hon. Secretary of War.

"It has been enjoined that questions of payment in such cases shall be submitted to the Secretary of War. See letter of July 7, 1863, from Col. J. A. Hardee, Asst. Adjt. General, to the Paymaster General, stating the orders of the War Department, that 'an officer restored to the service either by the revocation of the order of dismissal or discharge, or by simple restoration, is not entitled to pay for the period that he was out of service, unless the same is expressly ordered by the War Department.'

"The language of the Judge Advocate General on this point is to the same effect. (See Judge Advocate's Digest of 1868, p. 266.) 'Where an order of the War Department for the dismissal, discharge, or muster-out of an officer is subsequently revoked, and he reinstated in his former rank and position, it is competent for the President, in his discretion, to allow him pay for the interval during which he was illegally separated from the service under the original order.'

"The course of military administration has, however, developed no precise rule on this subject, each case of a claim for pay by such an officer having been, in practice, determined by the special circumstances surrounding it.

"BENJ. ALVORD,
"Paym'r General U. S. Army.

"P. M. G. OFFICE, Aug. 9, 1877."

The Secretary of War returned the letter to the Paymaster General through the Adjutant General, and when it reached the Paymaster General, it had on it the following indorsements:

" Respectfully returned (through the Adjutant General) to the Paymaster General.

" By the order of the President of Aug. 4, 1877, the approval of the proceedings and sentence in the case of Major B. P. Runkle, of date January 16, 1873, was revoked, the said proceedings and sentence were disapproved, and the order of dismissal was set aside.

" This order of the President must be accepted by this Department as revoking said order of dismissal from its inception and as annulling all its consequences. As Major Runkle was, at the time of his trial and sentence, an officer of the retired list, the fact that he has not been on duty in the interim can make no difference, since a retired officer is not subject to duty.

" He will, therefore, be paid, whenever funds are available for that purpose. This indorsement has been submitted to and is approved by the President.

" GEORGE W. McCRARY,<br>" Secretary of War.

" WAR DEPT., *Aug.* 13, '77.

" Noted and respectfully forwarded.

" E. D. TOWNSEND,

" AUG. 14, '77. . *Adj't Gen'l.*"

Upon receiving back the said letter with said indorsements, the Paymaster General made thereon this indorsement:

" Respectfully referred to Major Alexander Sharp, P. M., U. S. A., Present. Maj. Runkle was last paid to include Jan. 15, 1873.

" CHAS. T. LARNED,<br>" Acting Paym'r Gen'l U. S. Army.

" C. T. L., P. M. G. O., *Aug.* 15, 1877."

It was in obedience to the order of the President, signified by the above indorsement of the Secretary of War, that the claimant was paid the aforesaid sum. of $9195.27.

Upon the foregoing facts the conclusions of law were as follows :

1. That the claimant is not entitled to recover longevity pay.

2. That the defendants are not entitled, under their counter-claim, to recover the pay received by the claimant as a retired major, which accrued after the 4th of August, 1877, amounting to $14,390.35.

3. That the defendants are entitled, under their counter-claim, to recover of the claimant $9195.27, being the amount paid him for the time between January 16, 1873, and August 4, 1877.   19 C. Cl. 395.

From a judgment entered in accordance with these conclusions both parties appealed.

*Mr. Martin F. Morris* for Runkle. · *Mr. Donn Piatt*, and *Mr. George W. McCrary* each filed a brief for same.

*Mr. Assistant Attorney General Howard* for the United States submitted on the record.[1]

---

[1] The record contained among other things the opinion of the Court of Claims delivered by DRAKE, C. J. The following extract from that opinion relates to the point decided by this court :

" The proceedings of the court in the claimant's case were transmitted to the Secretary of War during the Presidency of Ulysses S. Grant, and on the 16th of January, 1873, the Secretary wrote thereon the order set forth in finding IV, and also in this opinion.

" The question is, whether by this order it appears that President Grant confirmed the sentence of the court. The claimant contends that it does not, and insists that the supposed confirmation was merely the act of the Secretary, and not that of the President, and so was no confirmation at all. It cannot be denied that this raises a question of no ordinary significance in the administration of military law ; but we think it not of very great weight.

" In the first place, it is important to note that there is not, nor ever was, any law requiring the President's confirmation of the sentence of a court-martial to be attested by his sign manual.

Opinion of the Court.

MR. CHIEF JUSTICE WAITE, after stating the case as above reported, delivered the opinion of the court.

We will first consider the second of the questions referred to the Court of Claims, namely:

"In the next place, referring to the act of August 7, 1789, 'to establish an Executive Department, to be denominated the Department of War,' 1 Stat. 49, substantially retained in § 216 of the Revised Statutes, we find that the Secretary of War is to perform and execute such duties as shall be enjoined on or intrusted to him by the President relative to the land or naval forces, and to conduct the business of the War Department in such manner as the President shall, from time to time, order and instruct.

"We need not discuss the relations established between the President and the Secretary of War by that act; for that matter was long ago settled by the Supreme Court of the United States, and we have only to refer to its rulings.

"In *Wilcox* v. *Jackson*, 13 Pet. 498, the question was whether an order of the Secretary of War directing certain public lands to be reserved for military purposes, was authorized under a statute declaring all lands exempted from preëmption which are reserved from sale by order of the President. The Supreme Court held the order of the Secretary of War to be in law that of the President, and the opinion of the court uses this language:

'Although the immediate agent in requiring this reservation was the Secretary of War, yet we feel justified in presuming that it was done by the approbation and direction of the President. The President speaks and acts through the heads of the several Departments in relation to subjects which appertain to their respective duties. Both military posts and Indian affairs, including agencies, belong to the War Department. Hence we consider the act of the War Department in requiring this reservation to be made, as being in legal contemplation the act of the President; and consequently, that the reservation thus made was in legal effect a reservation made by order of the President, within the terms of the act of Congress.'

"In *United States* v. *Eliason*, 16 Pet. 291, the question was whether a regulation promulgated by the War Department was the act of the President, and the court said:

'The Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the nation; and rules and orders promulged through him must be received as the acts of the Executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority.'

"After these decisions it cannot, in this court at least, be considered an open question, whether an approval of the proceedings and sentence of a court-martial, announced by an order of the Secretary of War, as in this case, is to be regarded as the act of the President.

· "Were the proceedings and findings of said court-martial regular, and the sentence duly approved by the President of United States, as required by law ?"

"It is not without use, in this connection, to refer to army precedents in like cases. We have obtained from the Department of Justice a copy of an unpublished opinion given June 6, 1877, by Attorney General Devens to President Hayes in regard to the case of the claimant; from which, with the permission of the head of that Department, we make the following extracts, embodying historical facts of interest and value:

. 'It is remarked by Major Runkle's counsel, in a printed argument filed with the papers, that "·all of our earlier Presidents signed the approval of such sentences, and it is believed that it was only during the last Administration that the contrary practice prevailed."

'But I have before me several instances of the "contrary practice" happening prior to 1860, one of which occurred nearly half a century ago.

'Thus, in the case of First Lieutenant William S. Colquhoun, 7th Infantry, who was tried by court-martial and sentenced to be cashiered in 1829, the determination of the President (which confirmed the sentence, except as to the disqualification from thereafter holding any office in the army) was signified through the Secretary of War, Mr. Eaton, in a statement signed by the latter, purporting to be "by command of the President."

'So, in the case of First Lieutenant R. M. Cochrane, 4th Infantry, who, in 1844, was sentenced to be cashiered by a court-martial, the determination of the President, confirming the sentence, was signified through the Secretary of War, Mr. Wilkins. Here the latter made known the action of the President by indorsing upon the record of the proceedings and signing the following brief statement: "The proceedings, finding, and sentence of the court are approved. Nov. 28, 1844."

' So in the case of Major George B. Crittenden, Mounted Riflemen, who was sentenced to be cashiered by a court-martial in 1848, the determination of the President, confirming the sentence, was announced through the Secretary of War, Mr. Marcy, by a statement indorsing upon the record, and signed by the latter, which reads thus: "The President approves of the proceedings and sentence in the case of Major Crittenden, and directs the proper order to be issued thereon."

' So, in the case of Brevet Lieutenant-Colonel William R. Montgomery, major, 2d Infantry, who, in 1855, was sentenced by a court-martial to be dismissed the service, the determination of the President, confirming the sentence, was in like manner signified through the Secretary of War, Mr. Davis.

'So, in the case of First Lieutenant John N. Perkins, 1st Cavalry, who, in 1859, was sentenced by a court-martial to be cashiered, the action of the President, confirming the sentence, was in like manner signified through the Secretary of War, Mr. Floyd.

'I am informed by inquiry at the· office of the Judge Advocate General

The 65th Article of War, 2 Stat. 367, c. 29, in force at the time of these proceedings, was as follows: '

"Any general officer commanding an army, or colonel commanding a separate department, may appoint general courts-martial, whenever necessary. But no sentence of a court-martial shall be carried into execution until after the whole proceedings shall have been laid before the officer ordering the same, or the officer commanding the troops for the time being; neither shall any sentence of a general court-martial, in the time of peace, extending to the loss of life, or the dismission of a commissioned officer, or which shall, either in time of peace or war, respect a general officer, be carried into execution, until after the whole proceedings shall have been transmitted to the Secretary of War, to be laid before the President of the United States, for his confirmation or disapproval, and orders, in the case. All other sentences may be confirmed and executed by the officer ordering the court to assemble, or the commanding officer, for the time being, as the case may be."

Thus it appears that the sentence of a general court-martial, in time of peace, to the effect that a commissioned officer be cashiered — dismissed from service — is inoperative until approved by the President. Before then it is interlocutory and inchoate only. *Mills* v. *Martin*, 19 Johns. 7, 30; Simmons on Courts-Martial, 6th ed., ch. XVII, p. 294.

A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been

that numerous instances have occurred since the case last mentioned, in which the determination of the President, confirming sentences of dismissal by court-martial, has been signified and attested in the same way.'

"We might go further and point to what seems to us to be incontrovertible internal evidence in Secretary Belknap's order of its expressing not his, but President Grant's decision; but this opinion has been extended to such length that we forbear to discuss that subject. Our unhesitating judgment is, that the finding and sentence of the court were legally confirmed by President Grant, and that from the date of the official promulgation of their confirmation the claimant ceased to be an officer of the army."

accomplished it is dissolved. 3 Greenl. Ev. § 470; *Brooks* v. *Adams*, 11 Pick. 441, 442; *Mills* v. *Martin, supra*; *Duffield* v. *Smith*, 3 S. & R. 590, 599. Such also is the effect of the decision of this court in *Wise* v. *Withers*, 3 Cranch, 331, which, according to the interpretation given it by Chief Justice Marshall in *Ex parte Watkins*, 3 Pet. 193, 207, ranked a court-martial as "one of those inferior courts of limited jurisdiction whose judgments may be questioned collaterally." To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law. *Dynes* v. *Hoover*, 20 How. 65, 80; *Mills* v. *Martin*, 19 Johns. 33. There are no presumptions in its favor so far as these matters are concerned. As to them, the rule announced by Chief Justice Marshall in *Brown* v. *Keene*, 8 Pet. 112, 115, in respect to averments of jurisdiction in the courts of the United States, applies. His language is: "The decisions of this court require, that averment of jurisdiction shall be positive — that the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred, argumentatively, from its averments." All this is equally true of the proceedings of courts-martial. Their authority is statutory, and the statute under which they proceed must be followed throughout. The facts necessary to show their jurisdiction and that their sentences were conformable to law must be stated positively; and it is not enough that they may be inferred argumentatively.

As the sentence now under consideration involved the dismissal of Runkle from the army, it could not become operative until approved by the President, after the whole proceedings of the court-martial had been laid before him. The important question is, therefore, whether that approval has been positively shown.

The Court of Claims has found as a fact in the case that the "proceedings, findings, and sentence of said court-martial were transmitted to the Secretary of War," but it has not

found that they were laid before the President, or acted on by him, otherwise than may be inferred argumentatively from the orders of the Secretary of War, and the subsequent action of President Grant and President Hayes.

There can be no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court. *Wilcox* v. *Jackson*, 13 Pet. 498, 513; *United States* v. *Eliason*, 16 Pet. 291, 302; *Confiscation Cases*, 20 Wall. 92, 109; *United States* v. *Farden*, 99 U. S. 10, 19; *Wolsey* v. *Chapman*, 101 U. S. 755, 769.

Here, however, the action required of the President is judicial in its character, not administrative. As Commander-in-Chief of the Army he has been made by law the person whose duty it is to review the proceedings of courts-martial in cases of this kind. This implies that he is himself to consider the proceedings laid before him and decide personally whether they ought to be carried into effect. Such a power he cannot delegate. His personal judgment is required, as much so as it would have been in passing on the case, if he had been one of the members of the court-martial itself. He may call others to his assistance in making his examinations and in informing himself as to what ought to be done, but his judgment, when pronounced, must be his own judgment and not that of another. And this because he is the person, and the only person, to whom has been committed the important judicial power of finally determining upon an examination of the whole proceedings of a court-martial, whether an officer holding a commission in the army of the United States shall be dismissed from service as a punishment for an offence with which he has been charged, and for which he has been tried. In this connection the following remarks of Attorney General Bates, in an opinion furnished President Lincoln, under date of March. 12, 1864, 11 Opinions Attorneys General, 21, are appropriate:

"Undoubtedly the President, in passing upon the sentence of a court-martial, and giving to it the approval without which it cannot be executed, acts judicially. The whole proceeding from its inception is judicial. The trial, finding, and sentence are the solemn acts of a court organized and conducted under the authority of and according to the prescribed forms of law. It sits to pass upon the most sacred questions of human rights that are ever placed on trial in a court of justice; rights which, in the very nature of things, can neither be exposed to danger nor subjected to the uncontrolled will of any man, but which must be adjudged *according to law*. And the act of the officer who reviews the proceedings of the court, whether he be the commander of the fleet or the President, and without whose approval the sentence cannot be executed, is as much a part of this judgment, according to law, as is the trial or the sentence. When the President, then, performs this duty of approving the sentence of a court-martial dismissing an officer, his act has all the solemnity and significance of the judgment of a court of law."

We go, then, to the record to see whether it shows positively and distinctly that the sentence dismissing Runkle from the service was approved by President Grant. It does appear affirmatively that it was disapproved by President Hayes; and if not approved by President Grant, Runkle was never legally out of the service. It is true that, if it had been approved, the subsequent disapproval would have been a nullity, and could not have the effect of restoring him to his place; but if not approved, he was never out, and the disapproval kept him in, the same as if the court-martial had never been convened for his trial. In *Blake* v. *United States*, 103 U. S. 227, followed in *United States* v. *Tyler*, 105 U. S. 244, it was decided that the President had power to supersede or remove an officer of the army by the appointment, by and with the consent of the Senate, of his successor; but here there was nothing of that kind. Runkle was never removed otherwise than by the sentence of the court-martial, and the order of the War Department purporting to give it effect.

Coming then to the order on which reliance is had to show

.the approval of President Grant, we find it capable of division into two separate parts, one relating to the approval of the proceedings and sentence, and the other to the executive clemency which was invoked. and exercised. It is signed by the Secretary of War alone, and the personal action of the Presi-- dent in the matter is nowhere mentioned, except in the remis- sion of a part of the sentence. There is nothing which can have the effect of an affirmative statement that " the whole proceedings " had been laid before him for action, or that he personally approved the sentence. The facts found by the Court of Claims show that the proceedings, findings, and sentence of the court-martial " were transmitted to the Secre- tary of War, and that he wrote the order thereon," but there they stop. What he wrote is in the usual form of depart- mental orders, and, so far as it relates to the approval of the sentence, indicates on its face departmental action only.

What follows in the order does not, to say the least, clearly show the contrary. It relates to the executive clemency which was exercised, and then, for the first and only time, it appears, in express terms, that the President acted personally in the matter. It is there said : " The President is pleased to remit all of the sentence, except so much thereof as directs cashier- ing." If all the rest of the order was the result of the per- sonal action of the President, why was it referred to here and not elsewhere ? Might it not fairly be argued from this that the rest was deemed departmental business, and that part alone personal which required the exercise of the personal power of the President, under the Constitution, of granting pardons. And besides, according to the order as it stands, this action of the President was had, not on " the whole pro- ceedings," but " in view of the unanimous recommendation of the members of the court," " the former good character " of the accused, and " in consideration of evidence, by affidavits, presented to the War Department since the trial," and " credi- ble representations." If " the whole proceedings " had actu- ally been laid before him, as required by the Article of War, it was easy to say so.

Then, again, at the end of the order are these words, " which

[the sentence] will be duly executed." That which immediately preceded related to the remission of a part of the sentence, and the Secretary was careful to say that this was done by the President in person. The omission of any such language, or implication even, in the words which were added, leaves the order open to the construction that the Secretary was acting all the time on the idea that the personal judgment of the President was required only in reference to that part of the proceeding which involved the exercise of the pardoning power, and that the rest belonged to the Department.

Still further, it appears, from the order of President Hayes, that "the record of official action" showed that "on the 16th of January, 1873, W. W. Belknap, then Secretary of War, approved the proceedings of said court," and thereupon issued the order from the War Department announcing that Runkle was cashiered, and that after this order was issued, but on the same day, Runkle presented to President Grant a petition setting forth, among other things, "that the proceedings of said court had not been approved by the President of the United States as required by law." This petition was not only received by President Grant, but it was by him referred to the Judge Advocate General for "review and report." Upon this reference the Judge Advocate General acted and reported on the whole case. President Grant did nothing further in the premises, and the matter remained open when President Hayes came into office. He then took it up as unfinished business, and, acting as though the proceedings had never been approved, entered an order of disapproval.

Under these circumstances, we cannot say it positively and distinctly appears that the proceedings of the court-martial have ever in fact been approved or confirmed in whole or in part by the President of the United States, as the Articles of War required, before the sentence could be carried into execution. Consequently, Major Runkle was never legally cashiered or dismissed from the army, and he is entitled to his longevity pay, as well as that which he has already received for his regular pay, both before the order of Secretary Belknap was revoked and afterwards.

Such being our view of the case, it is unnecessary to consider any of the other questions which were referred to the Court of Claims. Neither do we decide what the precise form of an order of the President approving the proceedings and sentence of a court-martial should be; nor that his own signature must be affixed thereto. But we are clearly of opinion that it will not be sufficient unless it is authenticated in a way to show otherwise than argumentatively that it is the result of the judgment of the President himself, and that it is not a mere departmental order which might or might not have attracted his personal attention. The fact that the order was his own should not be left to inference only.

*The judgment of the Court of Claims is reversed, and the cause remanded for further proceedings in conformity with this opinion.*