Nott, Oh. J.,
delivered the opinion of the court:
When this case came before the court upon the demurrer (80 C. Cls. R., 304) it was understood that the petition fully and correctly set forth all the material facts of the case, and the court accordingly gave to the case all of the care and consideration which it could command in the belief that the decision would be final. The defendants, however, have come in and the case has gone to trial. The facts now found vary from those upon which the case was previously considered.
The principal question then before the court, and the only question upon which the court passed, was whether a person in the Navy, imprisoned on board a ship, could be brought to trial without having been “furnished with a true copjr of the charges, with the specifications” (Rev. Stat., p. 283, sec. 1624, art. 43), and without knowing specifically what the}1' were until he heard them read before the court on the trial. The petition contained an extract from the logbook, by which it appears that on the 1st of Jul3r, the accused being in confinement, the judge-advocate of the coming court-martial read the specifications to him. But in the case as now presented it appears by the record of the proceedings of the general court-martial that, “in reply to an inquiry by the judge-advocate, the accused stated that he had received a copy of the charge and specifications preferred against him, 10.30 a. m., July 1, 1899."
Two questions are now before the court: First, whether this recital in the proceedings of the court-martial is sufficient evidence — it not being a part of the judgment of the court — of the admission of the accused that he had received a copy of the charge and specifications preferred against him at a certain time; and, second, whether furnishing a man with a copy of the charge and specifications on the 1st July, who had been in close confinement for an offense committed'on the same ship, but at another place, since the 26th day of May, was a sufficient compliance with the statute which requires that—
“The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial.” (Art. 43.)
*270 As oil the former bearing, the court confined its judgment to the first clause of the statute, “the person accused shall be furnished with a true copy of the charges, with the specifications,” so, on the present hearing, the court will confine its decision to the second clause, “at the time he is put under arrest.” That is to say, we are considering only the question whether a seaman arrested on board his ship at Iloilb, P. I., on the 26th day of May can be kept in close confinement and carried to Cavite, P. I., and not be made acquainted with the charges preferred against him until the 1st of July following.
For the purpose of this inquiry we assume that the recital before quoted in the proceedings of the court-martial is sufficient evidence of the fact that the charge and specifications were furnished to the prisoner on the 1st of Julju But it is not to be understood that the court so decides. That question is one which is by no means free from doubt. The recital is not a part of the findings of the court, of its judgment, of anything which the court did, but a part of the proceedings written up by the prosecuting officer; and the recital is not a statement of a fact, but merely an admission of a- fact on the part of the accused. He did not write the admission; ho did not dictate it; he did not sign it; he may not have understood it. All that we have is the judge-advocate’s understanding of what the prisoner admitted.
For a clearer comprehension of the points involved in this case we must examine the law regulating arrest and confinement.
In the Návy, as in the Army, a man may be arrested by the captain of his ship or the colonel of his regiment and placed m confinement for trivial offences without an assigned reason being given. But here the law comes in and provides that this confinement shall not exceed ten da}^ (Rev. Stat., p. 281, aft. 24). A longer confinement for a greater offence can only be imposed upon him by the sentence of a court-martial. The words of the statute are:
“Confinement, with or without irons, single or double, not exceeding ten days, unless further confinement be necessary, in the case of a prisoner to be tried by court-martial.”
At the end of ten days one of two things manifestly should happen: Either the prisoner should be released or it should *271 appear in some way that he is held to be tried by court-martial. This power to hold a man is unlimited; he may be confined with or without irons, single or double, until he is brought to trial.
But this power of indefinite confinement does not necessarily deprive a man of any legal right or personal safeguard. The law intends that when “confinement be necessary” he may be confined; that he may be rigorously confined “with or without irons, single or double;” that he may be thus kept in confinement until brought to trial; but it does not intend that he shall not have a fair trial or be deprived of a^1; of the means of establishing his innocence.
In the early days of the Navy the original rules and regulations for its government contemplated that some one other than the commanding officer would prefer charges and that they should be “exhibited in writing to the proper officer” and that “ the person demanding the court shall take care that the person accused be furnished with a true copjr of the charges, with the specifications, at the time he is put under arrest.” The statute then inhibits the court-martial from trying the accused upon any other charges, making, however, provision to prevent a multiplicity of trials for newly discovered offenses, but positively declaring that in such cases of subsequent charges “reasonable time shall be given to the person to be tried to make his defenses against such new charge." (Act %3d April, 1800, 22 Stat. L., pp. 50, 51, art. 38.)
In like manner article 43 of the Revised Statutes (p. 283) guards against a multiplicity o~f trials. It is in these words:
“The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial, unless it shall appear to the court that intelligence of such other charge had not reached the officer ordering the court when the accused was put under arrest, or that some witness material to the support of such charge ivas at that time absent and can be produced at the trial, in which case reasonable time shall be given to the accused to make his defense against such new charge.”
To the court it seems evident that the statute means what it says. The provision that “the person accused shall be *272 furnished with a true copy of the charges, with the specifications, at the time he is put under arrest” can have but one meaning, and that meaning can-not be expressed in plainer or simpler or more positive language than that used in the statute. That n'o other charges “shall be urged against him at the trial” is decisive of the intent. The person accused can not waive the nonfurnishing of the charges because he can not be called upon to plead to them. To hold the accused in confinement that he- may be brought to trial upon charges; to bring him into court for trial upon them; to read them to him and call upon him to plead to them is to “urge” them, and to urge them is the only wa3r in which charges against an accused person can be urged.
It has been suggested that the statute is directory and not mandatory. But the initial sentence of the Articles (p. 271) declares that “the Navy of the United States shall be GOVERNED by the following articles.” There is nothing in the for y-third article which indicates that it was framed for the guidance of courts-martial or which implies that thejT may disregard its injunctions. “The.person accused” is the subject of the article and every line is manifestly for his protection.
It has been suggested that time to prepare for trial is all that the statute accords to the person accused and that if sufficient time be granted to prepare his defense the terms of the statute will be satisfied; but to this there are two answers:
First. The statute contemplates the giving of reasonable time, and invests courts-martial with that power, and enjoins upon them that duty, but limits the authority to grant reasonable time to the “new” charges. There are two rules prescribed by the statute: As to the original charges upon which he was arrested, a true cop}r is to be furnished to the accused at the time he is put under arrest; as to the new charges not furnished to the accused at the time he was put under arrest, “ reasonable time shall be given to the accused to make his defense.” Expressio unites, exclusio alterius.
Second. A court-martial is not invested with power or authority to grant time to persons accused. It is convened to try such persons as maj7 be brought before it, and “the court is enjoined to sit from day to day, Sundays excepted, until *273 sentence is given, unless temporarily adjourned by the authority which convened it” (art. 45). 411 that a court-martial
could do would be to report the facts to the officer who convened the court, and it would be a matter of discretion with him to allow or not allow an adjournment. Assuredly the law never intended that the personal rights and safeguards of anjT person accused of crime, of crime which might involve property, or liberty, or life itself, should be dependent upon the discretion of a commanding officer. ■
This forty-third article was first enacted in its present form during the civil war. The history of its enactment throws some light upon the intent of Congress. It is thus sketched in the preceding opinion on the demurrer in this case:
“ On the 17th July, 1862, Congress passed two statutes (12 Stat. L., p. 594; ib., pp. 600-604, art. 15), the one relating to the arrest and imprisonment of officers in the Army, the other to the arrest and imprisonment of persons in the Navy.
“These statutes were passed in the midst of a great war, and concerning the circumstances which surrounded the former statute and led to its enactment Mr. Blaine has said:
“ ‘In answer to the call upon the President for information, Mr. Lincoln sent a message to the Senate on the 1st of May, saying, “ General Stone was arrested and imprisoned under my general authority, and upon evidence which, whether he be guilty or innocent, required, as appears to me, such proceedings to be had against him for the public safetjr. ” The President deemed it “ incompatible with the public interest, and perhaps unjust to General Stone, to make a particular statement of the evidence.” After saying that General Stone had not been tried because the officers to constitute a court-martial could not be withdrawn from duty without serious injury to the service, the President gave this public assurance: “ He will be allowed a trial without unnecessary delay. The charges and specifications will be furnished him in due season, and every facility for his defense will be afforded him by the War Department.” This message on its face bears evidence that it was prepared at the War Department, and that Mr. Lincoln acted upon assurances furnished by Mr. Stanton. The arrest was made upon his “general” authority, andclearty not from any specific information he possessed. But the effect of the message was to preclude any further attempt at intervention by Congress. Indeed, the assurance that General Stone should be tried “ without unnecessary delay ” was all that could be asked. But the promise made to the ear was broken to the *274 hope, and General Stone was left to languish without a word of intelligence as to his alleged offense, and without the slightest opportunity to meet the accusers who, in the dark, had convicted him without trial, subjected him to cruel punishment, and exposed him to the judgment of the world as a degraded criminal.
“ ‘Release from imprisonment came at last by the action of Congress, coercing the Executive Department to the trial or discharge of General Stone. In the act of July 17, 1862, “defining the pay and emolument of certain officers,” a section was inserted declaring that “whenever an officer shall be put under arrest, except at remote military posts, it shall be the duty of the officer by whose order he is arrested to see that a copy of the charges shall be served upon him within eight days thereafter, and that he shall be brought to trial within ten days thereafter, unless the necessities of the service prevent such trial; and then he shall be brought to trial within thirty daj^s after the expiration of said ten days, or the arrest shall cease.”’ (Twenty Years of Congress, vol. 1, p. 390.)
“The statute relating to the Navy is without qualification, broaJer and more imperative in terms. It has since found its way into the Revised Statutes with no substantial change of phraseology.”
It is needless to advert to the manjr decisions of the Supreme Court holding that statutory regulations governing the proceedings of a courhmartial must be complied with. They are summed up in a sentence or two in the case of Brown v. Keene (8 Pet., 112):
“The trial, finding, and sentence are the solemn acts of a court organized and conducted under the authority of and according to the prescribed foi’ms of law. It sits to pass upon the most sacred questions of human rights that are ever placed on trial in a court of justice; rights which, in the very nature of things, can neither be exposed to danger nor subjected to the uncontrolled will of any man, but which must be adjudged according to law.”
And are reiterated in Runkle v. United States (122 U. S., 543).
Finally, it has been said that the statement of the accused-set forth in the proceedings of the court-martial is substantially a confession, and that no wrong can be done to a man who is thus self-convicted.
But concerning this so-called “confession” thqre are two 'things to be said: First, it did not constitute the only evi *275 dence before the court-martial; and, second, the statement shows that a man who had worked hard for four hours “in the bilges under hot boilers, and also had had his regular watch from. 8 p. m. to midnight,” and being ordered by an assistant engineer to go on duty from noon to tl p. m., thought that injustice was done to him and “became excited and said more than he intended. ” It is impossible for this court to believe that upon that statement alone, due regard being given to every part of it, a court-martial would have sentenced a man “to be confined in such place as .the Secretary of the Navy may direct for a period of one year; to perform extra police duties during such confinement; to lose all pay that may become due to him during such confinement, except the sum of $3 per month for necessary prison expenses, and a further sum of $20 to be paid him at the expiration of his term of confinement, when he shall be dishonorably discharged from the United States Navy, total loss of pay amounting to $376.”
The judgment of the court is that the claimant recover all of the pay withheld from him under and by authority of the sentence of the court-martial, amounting to $376.