## PEROVICH v. PERRY, U. S. Marshal.

### (Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

### No. 1,567.

1. EVIDENCE (§ 44*)—JUDICIAL NOTICE—OFFICERS OF UNITED STATES.

 A court of the United States will take judicial notice of the name of the incumbent of a cabinet office.

 [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 66; Dec. Dig. § 44.*]

2. EVIDENCE (§§ 23, 83*)—PRESUMPTIONS—OFFICIAL ACTS.

 A telegram signed with the surname of the Attorney General of the United States, purporting to state the decision of the President on an application made to him by a convicted prisoner for a commutation of sentence, will be presumed authentic, and is sufficient notice of the President's action, which, as the court will take judicial notice, may properly be taken in such matters through the Department of Justice.

 [Ed. Note.—For other cases, see Evidence, Dec. Dig. §§ 23, 83.*]

Appeal from the District Court of the United States for the Third Division of the District of Alaska.

John F. Dillon, T. C. West, and Leroy Tozier, for appellant.

Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This is an appeal from a judgment of the United States District Court for the Territory of Alaska, ren-

dered on the 30th day of January, 1908, remanding the appellant to the custody of the appellee as United States marshal, to be dealt with according to law, and dismissing a writ of habeas corpus. The absence of a proper record on appeal would justify a dismissal of the appeal, without considering the question attempted to be raised by the assignments of error.

There is in the record a paper purporting to be "Findings of Fact and Conclusions of Law," but it is unsigned, and therefore has properly no place in the record. There is also an unsigned exception which recites that the—

"plaintiff excepts to each and every conclusion of law reached and held by the court, upon the ground that in neither or any of them is the law correctly stated, and that they, and each of them, are opposed to the law."

In the assignment of errors there are recitals from which it appears that there was a sentence of death pronounced against the appellant on May 29, 1907; that application was made to the President of the United States for commutation of sentence, and that, pending the determination of the application by the President, application was made to the Governor of Alaska for a reprieve, which was granted, and the execution of the sentence was stayed to February 1, 1908, between the hours of 6 o'clock a. m. and 6 o'clock p. m; that prior to that date the President denied the petition for a commutation of sentence, and the defendant in error was about to execute the sentence of the court when a petition was presented to the court for a writ of habeas corpus.

There is an attempt to raise a question as to the sufficiency of the indictment under which the appellant was tried and convicted; but that question cannot be considered here. The original judgment appears to have been taken to the Supreme Court of the United States upon a writ of error, where it was held "that the defendant was properly convicted, and the judgment of the court was affirmed." Perovich v. United States, 205 U. S. 86, 27 Sup. Ct. 456, 51 L. Ed. 722.

It appears that the decision of the President denying the application of commutation of sentence was made known by a telegram signed "Bonaparte." The appellant seeks to raise the question whether this notice of the decision of the President was sufficient in law. The telegram is not in the record, and, as there is no bill of exceptions, this court would be justified in declining to consider this question; but in view of the serious character of the case, the law upon the subject will be stated:

The courts will take notice of whatever is generally known within the limits of their jurisdiction. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200.

Facts which are so generally known that every well-informed person knows them, or ought to know them, need not be proven, and will be judicially recognized without proof. Taylor on Evidence, § 21, American Notes, 36.

These rules of evidence are founded upon very ancient legal maxims:

"Lex non requirit verificari quod apparet curiæ." The law does not require that to be verified (or proved) which is apparent to the court. Baten's Case, 9 Coke, 54b.

"Quod constat clare non debet verificari." What is clearly apparent need not be proved. Thornicroft v. Barns, 10 Mod. 150.

"Quod constat curiæ opere testium non indiget." That which appears to the court needs not the aid of witnesses. 2 Inst. (Coke) 662; Best on Evidence, § 252.

The incumbencies of the more important and notorious offices are judicially noticed. Wigmore on Evidence, § 2576.

In the case of Jean Peltier, 28 Howell's State Trials, p. 530, the defendant was indicted for a libel on Napoleon Bonaparte, First Consul of the French Republic, and was tried in the Court of King's Bench in 1803, before Lord Ellenborough and a jury. In charging the jury, Lord Ellenborough said:

"That Napoleon Bonaparte was the Chief Magistrate and First Consul of France is admitted; and that the relations of peace and friendship subsist between us and the French Republic, and did so at the time of these publications, is also admitted; and, indeed, they were capable of easy proof, if they had not been admitted. Their notoriety seems to render all actual proof very unnecessary."

Section 2 of the act making provision for a civil government for Alaska, and for other purposes, approved June 6, 1900, c. 786, 31 Stat. 321, provides that the Governor of Alaska may—

"grant reprieves for offences committed against the laws of the district or of the United States, until the decision of the President therein shall be made known."

The President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. Wilcox v. Jackson, 13 Pet. 498, 513, 10 L. Ed. 264; Wolsey v. Chapman, 101 U. S. 755, 770, 25 L. Ed. 915; Runkle v. United States, 122 U. S. 543, 557, 7 Sup. Ct. 1141, 30 L. Ed. 1167; 7 Opinions of Attorneys General, 453.

It is generally known that Charles J. Bonaparte was the Attorney General of the United States and the head of the Department of Justice at the time the decision of the President was made known in this case, and that through that department the decision of the President in a pardon case would, in the regular course of business, be promulgated.

In the absence of the telegram from the record, it will be presumed that it contained all the usual evidences of authenticity, and that it contained sufficient information to enable the court to ascertain therefrom that the President had denied the application of the plaintiff in error for a commutation of sentence.

The judgment of the court below is affirmed.