UNITED STATES, Appellee

v.

LAWSON ARNOLD MUSICK, Staff Sergeant,
U. S. Marine Corps, Appellant

3 USCMA 440, 12 CMR 196

No. 1738

Decided November 27, 1953

Kiernan R. Hyland, Esq., and MAJ Francis C. Foley, Jr., USMCR, for Appellant.

CDR Richard J. Selman, USN, and CAPT Carl G. Lutz, USMCR, for Appellee.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

On April 13, 1951, prior to the effective date of the Uniform Code of Military Justice, the accused was adjudged guilty of murder in violation of Article 6, Articles for the Government of the Navy, 34 USC § 1200. On May 16, the convening authority reviewed the record, affirmed the findings, reduced the period of confinement with corresponding reductions in the accessories, and forwarded the record to Washington, D. C., for review by the Secretary of the Navy. The record was received in

the office of The Judge Advocate General of that service on May 29, 1951. The following day was a legal holiday and on May 31, 1951, the record was referred to a Navy board of review for consideration and recommendation. That reviewing agency was brought into existence early in 1951 by authority of a letter of the Secretary of the Navy (dated January 10, 1951) and it was clothed with only advisory powers. We quote the essential parts of the letter:

"Final action on court-martial cases with respect to both legality and sentence will be taken by the Secretary of the Navy or whichever of his assistants may be assigned that duty. Action with respect to legality will continue to be taken upon the recommendation of the Judge Advocate General as at present, but action on sentences upon initial review will also be taken upon the recommendation of the Judge Advocate General instead of the Chief of Naval Personnel or the Commandant of the Marine Corps.

"In order that the Secretary of the Navy may have the benefit of the views of the Chief of Naval Personnel and the Commandant of the Marine Corps during the course of review of cases, one or more liaison officers will be furnished by each to the Judge Advocate General. It is specifically directed that each case involving an officer, the death penalty, or a sentence, as finally affirmed by a board of review, of 5 years' confinement or more, be referred to the Chief of Naval Personnel or the Commandant of the Marine Corps, as appropriate, for comment and recommendation.

"It is appreciated that during this period the boards of review will not have the statutory power to affirm all or parts of sentences which will be vested in them on the effective date of the Code. It is desired, however, that they take such action, as an action in the nature of a recommendation to the Secretary of the Navy. The concurrence of the Judge Advocate General in such action will be

assumed unless nonconcurrence is specifically expressed."

The board of review considered the record in accordance with the instructions outlined above and on July 13, 1951, its recommendation was sent to The Judge Advocate General. The members of the board of review concluded that the Government had not met the burden of proof in establishing the accused's sanity at the time of the murder and, therefore, they recommended that the trial proceedings be approved, but that the findings and sentence and the action of the convening authority thereon be set aside. The Judge Advocate General delayed his action to permit the accused to be transferred from a west coast penal institution to the Naval Medical Center, Bethesda, Maryland, for a complete psychiatric examination. His case was considered carefully by a board of medical officers and they concluded he was sane at the time of the commission of the offense and at the time of his examination. This conclusion was concurred in by the Board of Medical Survey and the Chief of the Bureau of Medicine and Surgery. Based on those subsequently obtained opinions The Judge Advocate General noted his nonconcurrence with the board of review's recommended disposition. The Acting Secretary of the Navy elected to accept the opinion of The Judge Advocate General and he affirmed the findings and sentence on January 7, 1952.

Accused petitioned this Court to review the decision of the board of review and the actions of The Judge Advocate General and the Secretary of the Navy. The Government filed a motion to dismiss on jurisdictional grounds and we denied the requested relief without prejudice to the Government to renew and argue the motion. This procedure was adopted to permit the matter to be argued more fully and to allow us to consider other matters raised by accused in the event we found jurisdiction to exist.

The first question which we now conclude is dispositive of this petition is whether the action of the Secretary of the Navy was properly completed under

the Articles for the Government of the Navy, or whether the Uniform Code of Military Justice cut across the procedure and diverted it to the newly created channel of appellate review. If the action was correctly and legally processed under the former Naval procedure, then this Court is without power to intervene and the action of the Naval authorities is not reviewable.

The new Code and Manual went into effect on May 31, 1951, but each contained a clause saving all pending prosecutions. This was provided for by the Congress of the United States in the Code and by the President in Executive Order 10214. The latter provides, in pertinent part, as follows:

"This manual shall be in force and effect in the armed forces of the United States on and after May 31, 1951, with respect to all court-martial processes taken on and after May 31, 1951: *Provided*, That nothing contained in this manual shall be construed to invalidate any investigation, trial in which arraignment has been had, or other action begun prior to May 31, 1951 . . ."

In construing the meaning and intent of this order we held in United States v. Sonnenschein, 1 USCMA 64, 1 CMR 64, decided November 27, 1951, that it was intended to provide for a transition to the new Code as quickly and with as little difficulty as possible. In order to accomplish that, it was necessary that all courts-martial actions commenced prior to May 31, 1951, be controlled by phase lines. We held the executive order marked out the lines and that when a line had been reached and a new phase started prior to the effective date of the act, the phase entered should be completed in accordance with the existing law. In that case we divided the Air Force court-martial proceedings into five distinct phases: investigation, trial, review by the convening authority, review by the board of review, and confirmation. A cursory glance at Naval procedure, under Articles for the Government of the Navy, makes it clear that such a breakdown has no meaning to that system. Under that law, there appears to have been three severable stages in the court-martial proceedings:

442

trial, review, and confirmatory phases. These stages are outlined generally in either the Articles for the Government of the Navy or the Manual provisions of Naval Courts and Boards, 1937. There are a number of sections found in the latter which deal with the trial phase but in view of the fact all parties concede that this portion of the proceedings was entirely completed under the previous law, we can pass on to the appellate stage. Section 469 of Naval Courts and Boards, 1937, provides as follows:

"*Sentence not effective until approved.*—No sentence of a court-martial may be carried into execution until the entire proceedings have been reviewed and the sentence duly approved in accordance with law. The law governing a general court-martial in this regard is given in the 53d A. G. N.; of a summary court martial in the 32d A. G. N.; and of a deck court in article 64(*d*). The approval of the convening authority of a general court martial is sufficient, except for sentences extending to death or to dismissal of a commissioned or warrant officer. When the confirmation of a sentence requires the approval of higher authority, the record should be forwarded to the next higher reviewing authority by the convening authority with his approval endorsed thereon."

The foregoing section amplifies to some extent Article 53 of the Articles for the Government of the Navy which provides:

"*Confirmation of sentence.* No sentence of a court-martial, extending to the loss of life, or to the dismissal of a commissioned or warrant officer, shall be carried into execution until confirmed by the President. All other sentences of a general court-martial may be carried into execution on confirmation of the commander of the fleet or officer ordering the court. (R. S. § 1624, art. 53.)"

From the foregoing Article and Section it would appear that, in general court-martial cases which did not involve death sentences or dismissal of officers or warrant officers, appellate re-

view commenced with the convening authority and, unless the Secretary of the Navy can be considered as part of the appellate review, it ended with that officer. He was given rather broad judicial powers to set aside or dismiss the proceedings or return them for revision, and he was granted clemency powers to remit and mitigate sentences. Naval Courts and Boards outlined the judicial powers which could be exercised while Article 54a, Articles for the Government of the Navy, contained the grant of powers to deal with the sentence. It granted the authority in the following language:

> "*Remission and mitigation of sentence.* Every officer who is authorized to convene a general court-martial shall have power, on revision of its proceedings, to remit or mitigate, but not to commute, the sentence of any such court which he is authorized to approve and confirm. (R. S., § 1624, art. 54.)"

Article 54b granted power to the Secretary of the Navy over proceedings and sentences of courts-martial. It is as follows:

> "The Secretary of the Navy may set aside the proceedings or remit or mitigate, in whole or in part, the sentence imposed by any naval court-martial convened by his order or by that of any officer of the Navy or Marine Corps. (Feb. 16, 1909, c. 131, § 9, 35 Stat. 621.)"

Counsel for the accused contends that Article 54b granted an accused an appeal to the Secretary of the Navy as a matter of right. Counsel for the Government, relying on the regulations previously mentioned, assert the Secretary had discretion to accept or reject a plea for relief. We can assume, for the purposes of this case, that accused places the proper interpretation on the Article; but that does not answer the question confronting us. Our answer must be controlled by a determination of whether the Secretary of the Navy was divested of his authority to consider the appeal of this accused because the Uniform Code of Military Justice became effective. He most certainly had the authority up to midnight May

30, 1951, and his right to carry on without interruption by the new Code was dependent upon the duties of The Judge Advocate General of the Navy and the place he occupied in the method of processing a record which was used by the Secretary of the Navy. Unless The Judge Advocate General can be considered as a separate and distinct appellate agency who had power to deal with a case without reference to the Secretary of the Navy, then the final phase of this review was started when the record was received in the office of The Judge Advocate General of the Navy on May 29, 1951.

There are certain well known principles of law which may assist us in arriving at a proper decision. Paragraph 480, Naval Courts and Boards, 1937, provides as follows:

> "The reviewing authority cannot delegate to an inferior or other officer his function as reviewing authority as conferred by the articles for the government of the Navy, nor can he authorize a staff or other officer to subscribe for him his decision and orders on the proceedings. He will sign in his own hand the action taken by him on the proceedings. His rank and official position should appear after his signature."

That this rule is acknowledged in Federal civilian courts is established in Runkle v. United States, 122 US 543, 30 L ed 1167, 7 S Ct 1141. In that case the United States Supreme Court was considering the purported action of the President of the United States and his right to delegate his prerogatives to a subordinate. If, as the Court held, he could not delegate his authority, *a fortiori*, the Secretary of the Navy could do no better. The following language is used by the Supreme Court in that case:

> "Here, however, the action required of the President is judicial in its character, not administrative. As Commander in Chief of the Army he has been made by law the person whose duty it is to review the proceedings of courts martial in cases of this kind. This implies that he is himself to consider the proceedings laid be-

**443**

fore him and decide personally whether they ought to be carried into effect. Such a power he cannot delegate. His personal judgment is required, as much so as it would have been in passing on the case, if he had been one of the members of the court martial itself. He may call others to his assistance in making his examinations and in informing himself as to what ought to be done; but his judgment, when pronounced, must be his own judgment and not that of another. And this because he is the person, and the only person, to whom has been committed the important judicial power of finally determining upon an examination of the whole proceedings of a court martial, whether an officer holding a commission in the Army of the United States shall be dismissed from service as a punishment for an offense with which he has been charged, and for which he has been tried."

We have been unable to find any military cases which expressly hold that The Judge Advocate General of the Navy had the independent power to decide issues of law or fact raised by a court-martial record. Naval Digest, 1916, at page 316, No. 30, refers us to "File No. 13673–3897, J.A.G., Oct 31, 1916; C.M.O. 37, 1916," but this appears to support the Government. The following quotation would appear to describe aptly the manner in which The Judge Advocate General of the Navy served the Secretary of the Navy as his legal advisor in determining legal issues found in courts-martial records:

"When the Judge Advocate General renders an opinion, he states his inference or conclusion of what, in contemplation of law, would or should follow from a given state of facts, and where an opinion of the Judge Advocate General is received, it may be followed, or not, in the judgment of the person whose duty it is to act in the premises.

"A decision is a ruling, or command, that certain things *shall* follow from a given state of facts, and departmental decisions are made by the head of the department. Where a decision has been rendered in any case by the Secretary of the Navy, it is an authoritative ruling or instruction which has all the force and effect of an order or command.

"As with court decisions, so with departmental decisions, there may be presented with the decision an opinion or statement of the reasons which influenced the head of the department in arriving at his conclusions and which influenced him in rendering his decision, while in other cases the decision may stand alone. In either case, it is the *decision*, and not the *opinion*, which is binding upon all persons in the Naval Establishment, whose cases come within its terms.

"The Judge Advocate General does not render *decisions*, and the Secretary of the Navy does not render *opinions*; the former renders opinions and the latter, decisions."

While there may have been some variations from that concept prior to the adoption of the Uniform Code of Military Justice, the contents of Secretary Matthews' letter, previously quoted herein, suggests that prior to January 15, 1951, the Department of the Navy had in force the following procedure: After the convening authority had acted on a record, it was forwarded to The Judge Advocate General of the Navy who maintained the office of record for, and who was legal advisor to, the Secretary of the Navy in court-martial cases. The Judge Advocate General reviewed the record as a staff officer and he made a recommendation to the Secretary on the legal questions affecting the findings and sentence. The record was also reviewed by the Chief of Naval Personnel and by the Commandant of the Marine Corps who made recommendations to the Secretary but those were for clemency purposes. Based in part on those three recommendations, the Secretary of the Navy rendered his decision in a particular case. Under that system, whether the review by the Secretary was mandatory or discretionary makes no difference, as the last phase began when The Judge Advocate General received the record. Had that procedure been followed up to May 31, 1951, the Secre-

tary of the Navy would have had the authority to process all cases received in the office of The Judge Advocate General of the Navy on the 29th day of May 1951.

Counsel for accused, however, press on us the argument that because the record was received by a board of review after that date a different legal situation is presented. We are, however, unable to see any substantial difference. As stated in the letter by the Secretary of the Navy, boards of review were not clothed with power to render decisions until midnight, May 30, 1951. At that time they came into legal existence as an independent agency in the military appellate system by virtue of the provisions of the Uniform Code of Military Justice. Prior to that time, in so far as the Naval service was concerned, they were used only as an advisory agency for the Secretary. The changes made by the Secretary of the Navy on January 15, 1951, altered his advising agencies but did not delegate any of his authority to decide the questions presented by the record. At most the change accomplished this: The Judge Advocate General of the Navy was granted the power to make recommendations on both legal and clemency matters; the Chief of Naval Personnel and the Commandant of the Marine Corps were to detail officers to assist The Judge Advocate General on the clemency recommendations; however, in cases which involved an officer or the sentence was for five or more years of confinement, the Chief and the Commandant were to be consulted; the boards of review were to review the record and take action which was to be limited, in legal effect, to a recommendation to the Secretary; and The Judge Advocate General's concurrence in the board of review's recommendations was assumed unless he specifically noted his nonconcurrence. This whole plan savors of a method adopted by the Secretary of the Navy to train boards of review and use their services to assist him in final disposition of a court-martial case. He was to make the decision and the other named individuals and boards were to be operating agencies which made recommendations to him.

Some of the recommendations would involve legal questions while others would be limited to clemency consideration but they were all interwoven into a single pattern which set the stage for action by the Secretary. Out of it all he was the only person with authority to take final action. He had both judicial and clemency powers and he alone could exercise them. If, therefore, the proceedings in this action had reached the stage where he was authorized to proceed with his method of reviewing the record, then the Executive Order permits him to complete his action without interference by us. As previously stated, regardless of whether we treat accused's right to review by the Secretary as being one of law or one of grace makes little difference to this decision. If it was a matter of grace, then appellate review ended with the convening authority. If on the other hand it was a matter of right, the Secretary of the Navy had commenced his proceedings, and the final phase had been reached. There must have been an ending of one phase and a beginning of the other, and we have concluded the only logical point was the time when the record was received in the office of The Judge Advocate General of the Navy. This commenced the operations of the final and confirming stage.

Much is said concerning the fact that the case was not referred to a board of review until May 31, 1951, and that, therefore, the Secretary of the Navy was not authorized to continue under the old system. It will be noted that The Judge Advocate General of the Navy divided the Naval proceedings into three phases and unless his plan was contrary to the Code or the executive order it was operative. That it did not contravene the law is substantiated by the conclusions we reach. In order to clarify proceedings in the confirming stage, he issued letters of instruction stating that cases received on the 29th day of May 1951 would be reviewed under the letter from the Secretary of the Navy, and those received on or after the 31st day of May would be reviewed under the Uniform Code of Military Justice. This memorandum was supplemented by instructions from

the Director, Military Law Division, who clarified its provisions by stating that the records bearing the received stamp showing receipt of the case in the office of The Judge Advocate General on May 31, 1951, or thereafter, were those which could be processed under the new system. These instructions in substance stated that the Secretary of the Navy would act on all cases received by his agent, The Judge Advocate General of the Navy, up to and including the 29th day of May 1951; that cases bearing that date stamp would be processed according to the rule set out in his memorandum of January 15, 1951; and that records being received in his office on or after the 31st day of May 1951, when the boards of review had legal existence and could decide cases under the new Code, were to be governed by the procedure prescribed by the new Act. In the instant case, the record was received by The Judge Advocate General on May 29, 1951, and it was included in the group of cases considered by the Secretary of the Navy. Everyone participating in the final phase of confirmation concluded the proceedings should follow the course outlined by the Naval authorities and there is no showing that the procedure adopted was for the purpose of denying the accused a right to appeal to this Court. It just so happens that his conviction and its confirmation were proceeding properly in the former channel of review and, under our previously announced rulings, must terminate under that system.

The motion to dismiss is granted.

Chief Judge QUINN and Judge BROSMAN concur.