In re CARTER.

(Circuit Court, S. D. New York. October 20, 1899.)

1. ARMY AND NAVY—COURTS-MARTIAL—DISMISSAL FROM SERVICE.

The same conduct, constituting an offense elsewhere provided for in the articles of war, may also warrant a finding of guilty by a court-martial, under the sixty-first article, providing that "any officer who shall be convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service."

2. SAME—PUNISHMENT—PUBLICATION OF SENTENCE.

Under the one hundredth article of war, providing that, "when an officer is dismissed for cowardice or fraud, the sentence shall further direct the crime, punishment, name and place of abode of the delinquent shall be published in the newspapers," etc., where an officer has been convicted of fraud by a court-martial it is bound to cause the special publication of sentence to be made.

3. SAME—JURISDICTION.

Where an offense is specifically provided for in any of the articles of war prior to the sixty-second, the grant of jurisdiction to a court-martial to try and punish such offense is conferred by the particular article which mentions it, and not by the general language of the sixty-second article, providing for the trial and punishment of all offenses not capital, and all disorders, though not mentioned in the preceding articles.

4. SAME—JURISDICTION.

Under the grant of jurisdiction to a court-martial conferred by the sixtieth article of war, providing that any person in the military service who misappropriates any money of the United States, "furnished or intended for the military service thereof," shall be punished, etc., such a court has no power to convict an officer of the army for misappropriating money appropriated by congress for the improvement of rivers and harbors.

5. SAME—PUNISHMENT—FINE AND IMPRISONMENT.

Under the sixty-second article, providing that all crimes not capital, which officers and soldiers may be guilty of, not mentioned in the foregoing articles, are to be taken cognizance of by a court-martial, and "punished at the discretion of the court"; and Rev. St. § 5488, providing that every disbursing officer, who, for any purpose not prescribed by law, transfers or applies any money intrusted to him, is deemed guilty of an embezzlement, and may be punished both by "fine and imprisonment,"— where an officer of the army has been found guilty by a court-martial of willfully misappropriating money appropriated by congress for the improvement of rivers and harbors, the court has authority to impose a penalty, both by fine and imprisonment.

In the Matter of a Habeas Corpus on the Relation of Oberlin M. Carter. Writ dismissed.

A. J. Rose, for relator.

Col. John W. Claus, U. S. Army, and Henry L. Burnett, U. S. Atty.

LACOMBE, Circuit Judge. The sentence of the court-martial, duly approved and confirmed, reads: "To be dismissed from the service of the United States; to suffer a fine of five thousand dollars; to be confined at hard labor, at such place as the proper authority may direct, for five years; and the crime, punishment, name, and place of abode of the accused to be published in and about the station and in the state from which the accused came or where he usually resides." The contention of the relator is that, conceding that the court-martial had jurisdiction of the per-

son of the accused and of the offenses charged, and conceding, further, the regularity of its proceedings and the propriety of its findings, it was without power to impose the four separate punishments of dismissal, fine, imprisonment, and degradation (special publication of sentence), although it might have imposed either one of them. When application was made for the writ, it appeared that the first punishment (dismissal from the service of the United States) and the fourth (publication of sentence) had been carried out; and the relator contended that, having thus paid a penalty which the court had power to inflict, he could not be held to submit to another penalty, which the court had no power to add to the one already by it selected. Since the return was made the relator has also paid the fine, and, although that fact does not appear upon the face of the original papers, it has been discussed in the briefs of both sides, and is now embodied in a stipulation, thus completing the case.

If the relator's premises be sound, viz. that punishments have been imposed in the aggregate, when the statute authorized their imposition only in the alternative, his conclusion is supported by high authority. Ex parte Lange, 18 Wall. 163. In that case it was held that when a court has imposed fine and imprisonment, where the statute only conferred power to punish by fine or imprisonment, and the fine has been paid, and the judgment of the court thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court as to that offense is at an end. The important question in the case, therefore, is whether, under the statutes of the United States, the court-martial had the power, under its findings, to impose a sentence inflicting these four penalties.

The relator was tried upon four separate charges, namely: (1) Conspiring to defraud the United States, in violation of the sixtieth article of war. (2) Causing false and fraudulent claims to be made against the United States, in violation of the sixtieth article of war. (3) Conduct unbecoming an officer and a gentleman, in violation of the sixty-first article of war. (4) Embezzlement, as defined in section 5488, Rev. St. U. S., in violation of the sixty-second article of war. He was found guilty of each of the four charges.

The sixty-first article of war provides that "any officer who shall be convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service." This is a provision wholly independent of the other definitions of offenses in the statute. The same course of conduct may constitute an offense elsewhere provided for, and also may warrant a finding of guilty under the sixty-first. The one hundreth article of war provides that, "when an officer is dismissed from the service for cowardice or fraud, the sentence shall further direct that the crime, punishment, name and place of abode of the delinquent shall be published in the newspapers," etc. This is a specific statutory penalty, which must inevitably follow the conviction, the court-martial being given no option as to its infliction. It is plainly additional to the punish-

ment imposed for the "cowardice or fraud" per se. It is understood that the relator does not now contend that his dismissal, and the publication of it, is sufficient ground for his discharge. What the relator does contend is that, having paid the fine, he is entitled to invoke the principle established in the Lange Case, on the theory that the court-martial had authority, under the sixtieth article, to impose only a fine or imprisonment, not to impose both. It is manifest that he is in no position to press this argument, unless he can dispose of the conviction and sentence under the fourth charge. That charge is "embezzlement, as defined by section 5488, Rev. St. U. S., in violation of the sixty-second article of war."

The sixty-second article of war reads as follows:

"Art. 62. All crimes not capital, and all disorders and neglects, which officers and soldiers may be guilty of, to prejudice of good order and military discipline, though not mentioned in the foregoing articles of war, are to be taken cognizance of by a general, or a regimental, garrison, or field-officers court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

The language, the general structure, and the specific provisions of this article indicate that it is a catch-all clause, intended to cover offenses not already specifically provided for. The framers of the article wisely foresaw that there might be many crimes, disorders, and neglects which could not be classified under any enumeration already contained in the articles, and which, if a court-martial were left without power to deal with them, might operate to the prejudice of good order and military discipline. Therefore, having "mentioned" various offenses which might be cognizable by a court-martial and punished as prescribed, the framers of the articles further provided that "all" offenses of certain specified characters, "though not mentioned," might also be taken cognizance of by a court-martial, and punished, at its discretion. It would seem to follow that, where an offense is found to be specifically provided for in any of the articles prior to the sixty-second, the grant of jurisdiction to try and punish such offense is conferred by the particular article which mentions it, and not by the general language of the sixty-second article. This proposition has commended itself to text writers (Davis, Mil. Law, pp. 70n–71; Winthr. Mil. Law [2d Ed.] pp. 1126, 1127), and is in accord with general principles of statutory construction (U. S. v. Tynen, 11 Wall. 88; U. S. v. Auffmordt, 122 U. S. 197, 7 Sup. Ct. 1182).

Section 5488 of the Revised Statutes reads as follows:

"Sec. 5488. Every disbursing officer of the United States who deposits any public money intrusted to him in any place or in any manner, except as authorized by law, or converts to his own use in any way whatever, or loans with or without interest, or for any purpose not prescribed by law withdraws from the treasurer or any assistant treasurer, or any authorized depository, or for any purpose not prescribed by law transfers or applies any portion of the public money intrusted to him, is, in every such act, deemed guilty of an embezzlement of the money so deposited, converted, loaned, withdrawn, transferred, or applied; and shall be punished by imprisonment with hard labor for a term not less than one year nor more than ten years, or by a

fine of not more than the amount embezzled or less than one thousand dollars, or by both such fine and imprisonment. (See secs. 3620, 5497.)"

The particular clause which is germane to the facts in the cause at bar, as appears from the findings of the court-martial, which sustain the fourth charge upon the first specification alone, is the one reading: "Every disbursing officer of the United States who * * * for any purpose not prescribed by law transfers or applies any portion of the public money intrusted to him is * * * deemed guilty of an embezzlement." Obviously, this is a crime, made so by this very section, and, unless already mentioned in the foregoing articles, would come within the provisions of the sixty-second. The sixtieth article reads as follows (the numbers of the paragraphs being inserted here for convenience of reference):

"Art. 60. Any person in the military service of the United States.

"(1) Who makes or causes to be made any claim against the United States, or any officer thereof, knowing such claim to be false or fraudulent; or

"(2) Who presents or causes to be presented to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof, knowing such claim to be false or fraudulent; or

"(3) Who enters into any agreement or conspiracy to defraud the United States by obtaining, or aiding others to obtain, the allowance or payment of any false or fraudulent claim; or

"(4) Who, for the purpose of obtaining or aiding others to obtain, the approval, allowance, or payment of any claim against the United States or against any officer thereof, makes or uses, or procures or advises the making or use of, any writing, or other paper, knowing the same to contain any false or fraudulent statement; or

"(5) Who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance, or payment of any claim against the United States or any officer thereof, makes or procures or advises the making of, any oath to any fact or to any writing or other paper, knowing such oath to be false; or

"(6) Who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance, or payment of any claim against the United States or any officer thereof, forges or counterfeits, or procures or advises the forging or counterfeiting of, any signature upon any writing or other paper, or uses, or procures or advises the use of, any such signature, knowing the same to be forged or counterfeited; or

"(7) Who, having charge, possession, custody or control of any money or other property of the United States, furnished or intended for the military service thereof, knowingly delivers, or causes to be delivered, to any persons having authority to receive the same, any amount thereof less than that for which he receives a certificate or receipt; or

"(8) Who, being authorized to make or deliver any paper certifying the receipt of any property of the United States, furnished or intended for the military service thereof, makes, or delivers to any person, such writing, without having full knowledge of the truth of the statements therein contained, and with intent to defraud the United States; or

"(9) Who steals, embezzles, knowingly and willfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordinance, arms, equipments, ammunition, clothing, subsistence stores, money, or other property of the United States, furnished or intended for the military service thereof; or

"(10) Who knowingly purchases, or receives in pledge for any obligation or indebtedness, from any soldier, officer, or other person who is a part of or employed in said forces or service, any ordinance, arms, equipments, ammunition, clothing, subsistence stores, or other property of the United States, such soldier, officer, or other person not having lawful right to sell or pledge the same,

—Shall, on conviction thereof, be punished by fine or imprisonment, or by such other punishment as a court-martial may adjudge. And if any person being guilty of any of the offenses aforesaid, while in the military service of the United States, receives his discharge, or is dismissed from the service, he shall continue to be liable to be arrested and held for trial and sentence by a court-martial, in the same manner and to the same extent as if he had not received such discharge nor been dismissed."

When the ninth subdivision of the sixtieth article is compared with the above-quoted subdivision of section 5488, it will be observed that, save in one particular, the former is broad enough to contain the latter. A person who, "for any purpose not prescribed by law, transfers or applies any portion of the public money intrusted to him," certainly "misappropriates" or "wrongfully disposes" of the same. But section 5488 covers such improper disposition of any public money, while the ninth subdivision of article 60 relates only to "money * * * of the United States furnished or intended for the military service thereof." It appears from the specification that the money was part of the sum appropriated by the act of June 3, 1896 (chapter 314, 29 Stat. pp. 202, 208), which is one of the usual "River and Harbor Acts." It enacts that the sums thereby appropriated are to be expended "for the construction, repair and preservation of the public works hereinafter named." The public works enumerated are devised and carried out to facilitate commerce, not for military purposes; and the only argument that is advanced to sustain the proposition contended for is that the secretary of war is charged with the duty of making surveys of rivers and harbors, reporting as to what improvements therein shall best subserve the public interests, and making contracts for the work, and that officers of the engineer corps are employed in taking charge of the execution of such contracts, and disbursing the money appropriated therefor. But, although the trained skill of army officers is thus availed of to superintend the disbursement of money appropriated for the improvement of natural facilities for commercial intercourse, thus saving the expense of engaging such skill elsewhere, it by no means follows that money so appropriated is "furnished or intended for the military service of the United States." The appropriation act for the fiscal year ending June 30, 1898,—which contains a further appropriation for Savannah Harbor,—also contains, under the heading "War Department," various items, to be expended under direction of the secretary of war acting through officers of the army, and dealing with such public works as the care of the "Smithsonian Grounds," the "laying asphalt walks around Judiciary Square, in the city of Washington," the "lighting of public grounds," and the "ordinary care of greenhouses and nursery at the Executive Mansion." Surely, these appropriations are not furnished or intended for "the military service," and appropriations for rivers and harbor improvements are of the same class. It would seem to be a very strained construction of the act which should hold that, because the disbursing officer is himself in the military service of the United States, the money which he disburses must be held to have been "furnished or intended" for the

military service, wholly irrespective of the purpose for which it is appropriated. It follows, therefore, that a court-martial would be without power to convict an officer of the army, under the sixtieth article, for knowingly or willfully misappropriating money of the United States appropriated for—"furnished or intended for" —the improvement of rivers and harbors. Such an offense, however, falls clearly within the language of section 5488, and is therefore covered by the sixty-second article.

It must be held, therefore, that the court-martial, having found the relator guilty of the first specification under the fourth charge, and of that charge, has statutory authority, under article 62 and section 5488, to impose a penalty of both fine and imprisonment. This conclusion leads to a dismissal of the writ. Counsel may attend at the opening of court on Monday, at 10:30 a. m., when the order may be settled and signed, and, in the event of an appeal being taken, the proper instructions upon remand, in conformity to the rules of the supreme court, may be given.