## Ex parte HENKES.

(District Court, D. Kansas, First Division.   November 28, 1919.)

No. 2022.

1. **War ⊗═⇒32—Record of court-martial in time of war should show that retired officers were in active service.**

   Under Manual for Courts-Martial, § 2, cl. 9, subd. B, permitting assignment of retired officer to court-martial duty in time of peace with his consent, and in time of war if employed on active duty in the discretion of the President, the record of a court-martial in time of war, which showed that it was composed of retired officers, should also show that those officers were on active duty in the discretion of the President.

2. **War ⊗═⇒32—Record of court-martial must show on face every fact essential to jurisdiction.**

   A general court-martial is a court of limited and special jurisdiction, and a record of conviction by such court must show on its face every fact essential to the jurisdiction of the court.

3. **Evidence ⊗═⇒386(1)—Evidence outside record not admissible to show that retired officers on court-martial were in active service.**

   On habeas corpus proceedings by one in custody under sentence of court-martial, outside evidence is inadmissible to show that the retired officers who composed the court-martial in time of war were employed on active duty in the discretion of the President, which fact was not shown by the record.

4. **Army and navy ⊗═⇒39—Officer convicted under special article of war cannot, on same specifications and proof, be convicted under general article.**

   An officer, who was convicted on three specifications for violation of the Ninety-Fifth Article of War, the penalty for which is dismissal only, cannot, on identical specifications and the same proof, be adjudged guilty of violating the Ninety-Sixth Article of War, making punishable all disorders to the prejudice of good order and military discipline at the discretion of the court, and sentenced to imprisonment as well as dismissal.

5. **Criminal law ⊗═⇒196—Offenses are the "same offenses," whenever evidence which would sustain one would sustain the other.**

   Offenses are the same, so that punishment for both is double jeopardy, whenever evidence adequate to one will sustain the other, though one contains more of criminal charge than the other, and the offenses have different names.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Same Offense.]

Habeas Corpus.   Petition by David A. Henkes for writ to secure his discharge from the United States Disciplinary Barracks at Ft. Leavenworth.   On demurrer of petitioner to the response of the commandant of the United States Disciplinary Barracks.   Demurrer sustained.

Lee Bond, of Leavenworth, Kan., for petitioner.

Fred Robertson, U. S. Atty., of Kansas City, Kan., for respondent.

POLLOCK, District Judge.   This is an application for writ of habeas corpus.   The facts, briefly stated, are, as follows:

Petitioner, for many years prior to our entrance into the late war, was a captain in the regular army.   His father was born in Germany; his mother in this country.   On account of his lineage petitioner had an aversion to engaging actively in a war against a nation of his kin-

dred. Hence, on May 26, 1917, he tendered his resignation, not stating therein his actual motive for so doing. Acceptance of this resignation was recommended by his superior officer, to whom it was tendered. On the same day petitioner wrote to the Honorable Secretary of War a letter, giving his true reasons for tendering his resignation, as follows:

San Antonio, Texas, May 26, 1917.

From: Capt. D. A. Henkes, 16th Inf.
To: The Secretary of War, Wash., D. C.
Subject: Resignation.

1. In the event that the reasons stated in my letter of resignation are not deemed sufficient, I feel it my solemn duty to further state the following:

2. Further service as a commissioned officer must sooner or later take me to Europe, and there bring me in conflict with those who are my relatives and friends, although for the time being legal enemies. My father came from Germany. My mother was born here shortly after the arrival of her parents. We have many other relatives and friends there. I cannot force myself to the conviction that I am capable of making war on my kindred upon their soil in a manner that would become my duty and station. I earnestly request that I may not be required to undergo this ordeal. I seriously doubt my ability to withstand it, and would avoid in the interest of my country, family, and friends what at least appears the probable consequences.

3. As an only alternative, if my services will not be dispensed with, I would suggest duty in another field. However, I most earnestly believe that it is to the manifest interest of the government that my services as a commissioned officer of the army be terminated by the acceptance of said resignation.

4. I sincerely regret to feel called upon to avoid the usual methods of communication. The subject and emergency appears to admit of no alternative, and I trust my efforts may be pardoned.  •  D. A. Henkes.

Later, on June 29, 1917, when en route overseas with his command, petitioner wrote another letter, addressed to the Adjutant General of the Army, as follows:

United States Expeditionary Force, France,
June 29, 1917.

From: Captain D. A. Henkes, 16th Infantry.
To: The Adjutant General, War Department, Washington, D. C.
(Through Military Channels.)
Subject: Resignation.

1. On May 26th I forwarded a letter tendering my resignation as an officer of the army. Reasons other than those specifically stated were alleged. These were verbally stated to the authorities approving resignation, viz.: My battalion commander, the Department Quartermaster, and the Commanding General, Southern Department. Believing it my duty to also acquaint my immediate superiors and the War Department of these reasons and of the situation in which I am placed, the following is submitted:

2. Further service must sooner or later bring me in conflict with those who are my relatives and friends, although for the time being legal enemies. My father came from Germany. My mother was born in the United States shortly after the arrival from Germany of her parents. Other relatives and friends remain there. My wife came from Austria. Near relatives of hers live there. I cannot force the conviction that I am capable of making war on my kindred upon their soil in a manner as becomes my duty and station. I request that I may not be required to undergo this ordeal. I seriously doubt my ability to withstand it, and would avoid, in the interest of my country, family, and friends, such consequences as at least appear probable.

3. If my services will not now be dispensed with, I request duty in another field, or such duty as will not require me to actively participate against my

own blood or personally direct others in doing so. I trust that my bequest may not be construed as disloyalty to my own country, or that same is inspired by a consideration of personal safety. I am willing to take transport duty in the submarine zone, or other duty of a similar nature, all of which I will perform to the best of my ability. However, I believe it but just that one so situated and whose services may be judged by a question of loyalty should not be placed in a position of trust or authority. I therefore beg that my services as a commissioned officer be now terminated by the acceptance of my resignation.                                        D. A. Henkes.

On October 10th, after having served with credit and distinction in the field, and after having been importuned to recall what he had expressed in the former communications, he wrote a further letter to the Adjutant General, as follows:

American Expeditionary Force, October 10, 1917.
From: Capt. D. A. Henkes, 16th Infantry.
To: The Adjutant General, War Dept.        (Through Military Channels.)
Subject: Resignation.

1. Pursuant to the provisions of Par. 79 A. R., I hereby tender my resignation as officer of the army, to take effect at earliest date.

2. My reasons have heretofore been stated, particularly in letter dated June 28 last, and are a matter of record. I do not now find occasion to add to or alter the views already expressed. The underlying facts are unalterable. These and the attendant circumstances have impelled me to the belief that my first duty became one of tendering my resignation as an officer of the army. That duty having been performed, I trust that those in position of authority and greater responsibility may see fit to recommend acceptance.
                                                      D. A. Henkes.

Thereafter he continued with his command in the field in France until he was ordered to and did return to this country. Whereupon he was placed under arrest, was charged, tried, and convicted by a general court-martial under the Ninety-Fifth and Ninety-Sixth Articles of War, and was sentenced to be dismissed from the service, and to be confined at hard labor for a period of 25 years. That sentence was reviewed, and the place of his confinement at hard labor designated as United States Disciplinary Barracks, Ft. Leavenworth, this state. While being so confined, he petitions for his discharge on writ of habeas corpus.

The commandant having petitioner in his custody has filed his response to the petition for the writ. To this response petitioner demurs. The case has been argued, and stands submitted for decision on said demurrer.

The grounds on which petition for the writ are based are as follows:

A court-martial is a court of special and limited jurisdiction; therefore the proceedings of such tribunal must disclose on their face the court was legally constituted as provided by law, and empowered to try the case and render judgment or impose sentence thereon, or the same is a nullity. That the proceedings against petitioner in this case as disclosed by the record made on the trial are void for two reasons, viz.: (1) The court was composed of retired army officers, who under the law were disqualified to sit in judgment on his case; (2) petitioner, as shown by the record, was first charged in three specifications drawn under the Ninety-Fifth Article of War, and on the same

identical specifications was again charged under the Ninety-Sixth Article of War, but was tried and convicted on all of the six specifications on the same identical evidence, and was punished under both Articles of War for the same identical offense.

May this be done?

[1] Coming, now, to the question of the composition of the general court-martial by which petitioner was tried, convicted, and sentenced, it is found section II, clause 6, page 6, of the Manual for Courts-Martial, certified by the Judge Advocate General of the Army under authority of the Secretary of War, provides for the composition of courts-martial, as follows:

"All officers in the military service of the United States and officers of the Marine Corps when detached for service with the Army by order of the President, shall be competent to serve on courts-martial for the trial of any persons who may lawfully be brought before such courts for trial. * * *

"(a) General courts-martial may be composed of any number from 5 to 13 inclusive. A general court-martial shall not consist of less than thirteen officers when that number can be convened without manifest injury to the service."

Clause 9, section II, subdivision (b), page 7, provides as follows:

"A retired officer may be assigned with his consent to active duty upon courts-martial in time of peace [Act April 23, 1904, 33 Stat. 264], and if employed on active duty in time of war in the discretion of the President [section 24, Act of June 3, 1916, 39 Stat. 183], he is eligible for court-martial duty. At other times he is not available for such duty, except that when placed in command of a post under the Act of August 29, 1916 [39 Stat. 627], or when assigned to recruiting duty, he may act as summary court-martial when he is the only officer present."

Turning now to the record made on the trial of petitioner, it is found to disclose the composition of the court in this case to have been as follows:

(1) Col. William S. Patten, retired.
(2) Col. George N. O. Cale, retired.
(3) Col. Edwin P. Brewer, retired.
(4) Col. Tredwell W. Moore, retired.
(5) Lieut. Col. Edward E. Hardin, retired.
(6) Lieut. Col. Edward R. Morris, retired.
(7) Lieut. Col. James A. Goodin, retired.
(8) Maj. Charles C. Dwyer, retired.
(9) Capt. William N. Wheeler, retired.
(10) Capt. Otto A. Nesmith, retired.
Maj. Jackson, A. Dykman, J. A. O. R. C., Judge Advocate.
First Lieut. John C. Livingston, retired Assistant Judge Advocate.

As the record made at the trial does not on its face disclose the members of the court were at the time it was convened "employed in active duty in the discretion of the President" under Act June 3, 1916, it follows, on the face of the record made, the court was not composed as by law provided, unless said record may be supplemented by evidence aliunde to show the fact, if it be a fact, the members of the court, although retired officers, were at the time in the discretion of the President on active duty. It is the insistence of the government this may be done. Petitioner denies this contention.

[2] In Deming v. McClaughry, 113 Fed. 639, 51 C. C. A. 349, Judge

Sanborn, for the Circuit Court of Appeals, this circuit, states the rule applicable to courts-martial as follows:

"The legal presumption is that courts of general jurisdiction have the power and the authority to make the adjudications which they render, and that their judgments are valid. But no such presumption accompanies the sentences of courts of inferior or limited jurisdiction. It is indispensable to the maintenance of their judgments that their jurisdiction shall be clearly and unequivocally shown. A court-martial is a court of limited jurisdiction. It is a creature of the statute, a temporary judicial body authorized to exist by acts of Congress under specified circumstances for a specific purpose. It has no power or jurisdiction which the statutes do not confer upon it. The Articles of War specify the officers who are empowered to convene these courts (articles 72, 73, 74, 81, 82), the officers who may compose them (articles 75, 76, 77, 78, 80), and the persons and charges which they are empowered to try (articles 77, 78, 80, 81, 82, 83). It necessarily follows that the jurisdiction of every court-martial, and hence the validity of each of its judgments, is conditioned by these indispensable prerequisites: (1) That it was convened by an officer empowered by the statutes to call it; (2) that the officers whom he commanded to sit upon it were of those whom he was authorized by the Articles of War to detail for that purpose; (3) that the court thus constituted was invested by the acts of Congress with power to try the person and the offense charged; and (4) that its sentence was in accordance with the Revised Statutes. The absence of any of these indispensable conditions renders the judgment and sentence of a court-martial coram non judice, and absolutely void, because such a judgment and sentence is rendered without authority of law and without jurisdiction. Runkle v. U. S., 122 U. S. 543, 546, 7 Sup. Ct. 1141, 30 L. Ed. 1167; Mills v. Martin, 19 Johns. 7, 30; Wise v. Withers, 3 Cranch, 331, 2 L. Ed. 457; Ex parte Watkins, 3 Pet. 193, 207, 7 L. Ed. 650; Dynes v. Hoover, 20 How. 65, 80, 15 L. Ed. 838." .

The general rule in regard to courts of limited and special jurisdiction, such as courts-martial, is stated in Grignon's Lessee v. Astor et al., 2 How. 319, 11 L. Ed. 283, as follows:

"The true line of distinction between courts whose decisions are conclusive, if not removed to an appellate court, and those whose proceedings are nullities, if their jurisdiction does not appear on their face, is this: A court which is competent by its constitution to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in its proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the first description; there can be no judicial inspection behind the judgment, save by appellate power. A court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities."

The general rule is again stated by the Supreme Court in Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959, as follows:

In proceedings had under special statutory authority, "where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon their record."

In Cyc. vol. 11, p. 696, the rule is stated as follows:

"Where the statute confers special authority not within the general jurisdiction of the court, to be exercised not according to the course of the com-

mon law, sufficient matter must appear of record or on the face of the proceedings to show the case to be within such special jurisdiction. * * * A court of special, limited, or inferior jurisdiction must by its record show all essential or vital jurisdictional facts of its authority to act in the particular case, and in what respect it has jurisdiction. This rule also applies to jurisdiction over special statutory proceedings exercised in derogation of, or not according to, the course of the common law. So the necessary jurisdictional facts must affirmatively appear by averment and proof to bring the case within the jurisdiction of such courts," etc.

These general propositions are well supported by the adjudicated cases, as was distinctly announced by Mr. Chief Justice Waite, delivering the opinion for the court in Runkle v. United States, 122 U. S. 543, 7 Sup. Ct. 1141, 30 L. Ed. 1167.

A reading and consideration of the record made by the general court-martial trying petitioner, found in this case, disclosed it was composed of ten members, each at the time being a retired army officer; that two of said members were excused from sitting. Hence the trial was actually proceeded with by eight retired army officers, each by the law disqualified to be a member of said court, unless theretofore "in the discretion of the President employed in active duty." Whether so employed, however, the record made in this case is utterly silent. As it is a record of a court of special and limited jurisdiction, it seems to be conclusively settled its jurisdiction must affirmatively appear on the face of the record, and in the absence of such affirmative showing its judgment is a nullity.

[3] As from the record made by such a court it must affirmatively disclose on its face the jurisdiction and power of the court, it follows, when the record made discloses want of jurisdiction in the court as composed, evidence dehors the record may not be admitted to supplement the same. It follows, on this ground, the demurrer to the response must be sustained.

[4] However, there is another ground of challenge to the record made in this case, requiring consideration in the event the court was lawfully composed. Petitioner was charged on three specifications drawn under the Ninty-Fifth Article of War, was also charged on three specifications in identical language framed under the Ninty-Sixth Article of War, and was adjudged guilty and sentenced on each, all, and every of said specifications to be dismissed from the service and to be confined at hard labor for 25 years. Under article 95, the sentence of dismissal alone could enter against him. Under article 96, both dismissal and confinement are permitted. The Ninty-Sixth Article of War is a re-enactment of the old Sixty-Second Article of War. It is never resorted to, unless the offense charged falls under no other article. It has been termed the "drag-net Article of War," and the specifications, under both charges in this case, being identical in language, the proofs in support of the charges being identical, it must be thought, the court, having charged, tried, convicted, and sentenced petitioner under the specific provisions of the Ninty-Fifth Article of War, it was without further power to charge, try, convict, and punish him under the general provisions of the Ninty-Sixth Article of War.

This would appear from the language of the Ninty-Sixth article, which reads as follows:

"Though not mentioned in these articles, all disorders and neglects to the prejudice of good order and military discipline, all conduct of a nature to bring discredit upon the military service, and all crimes or offenses not capital, of which persons subject to military law may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

Hence the record so made discloses petitioner to have been twice placed in jeopardy for the same identical offense. In Re Carter (C. C.) 97 Fed. 496, it is said:

"Where an offense is specifically provided for in any of the Articles of War prior to the sixty-second, the grant of jurisdiction to a court-martial to try and punish such offense is conferred by the particular article which mentions it, and not by the general language of the sixty-second article, providing for the trial and punishment of all offenses not capital. and all disorders, though not mentioned in the preceding articles."

[5] It is a general rule, if two indictments set out like offenses and relate to one transaction, yet if one contains more of criminal charge than the other, but upon either there would be a conviction for what is embraced in the other, the offenses, though of different names, are within our constitutional guaranty the same. Fox v. State, 50 Ark. 528, 8 S. W. 836; State v. Cooper, 13 N. J. Law, 361, 25 Am. Dec. 490; 1 Chitty, Crim. Law, 455.

Offenses are the same, whenever evidence adequate to the one indictment will equally sustain the other. United States v. Lee, 4 Cranch, C. C. 446, Fed. Cas. No. 15586; United States v. Miner, 11 Blatchf. 511, Fed. Cas. No. 15780; Holt v. State, 38 Ga. 187; State v. James, 63 Mo. 570; Wright v. State, 17 Tex. App. 152; In re Nielsen, 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118; United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246; Coffey v. U. S., 116 U. S. 436, 6 Sup. Ct. 437, 29 L. Ed. 684. In Ex parte Lange, 18 Wall, 163, 21 L. Ed. 872, Mr. Justice Miller, delivering the opinion for the court, said:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there never has been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense."

It follows the demurrer to the response must be sustained.
It is so ordered.